JUDGE GARDEPHE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 6004

---------------------------------------------------------------X

GINGER KIRALY,

                      Plaintiff,

-against-

RELATED MANAGEMENT COMPANY,

                      Defendant.

---------------------------------------------------------------X

Docket No.:

COMPLAINT

[RECEIVED AUG 27 2013 U.S.D.C. S.D.N.Y. CASHIERS]

Plaintiff Ginger Kiraly, by and through her attorney, Nesenoff & Miltenberg, LLP, alleges and complains as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant Related Management Company, ("Defendant") because of its unlawful interference with her exercise of rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. (the "FMLA"), and discrimination against her for exercising her FMLA rights and her perceived and actual disability in violation of the FMLA, the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq., (the "Human Rights Law") and the New York City Administrative Code § 8-101, et seq. (the "City Law"), for retaliation under the FMLA, the Human Rights Law and City Law, for aiding and abetting perceived and actual disability discrimination and failure to provide a reasonable accommodation in violation of the Human Rights Law and City Law.

2. Plaintiff seeks compensatory and punitive damages, liquidated damages, attorneys' fees and other appropriate relief pursuant to the FMLA, Human Rights Law and City Law.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's FMLA claims pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331.

4. This Court may assert supplemental jurisdiction over Plaintiff's Human Rights Law and City Law claims as authorized by 28 U.S.C. § 1367(a).

5. Venue is proper within this Judicial District pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events and/or omissions giving rise to the claims herein occurred in the Southern District of New York.

## THE PARTIES

6. Plaintiff Ginger Kiraly ("Plaintiff") resides in New York County in the State of New York and is a citizen of the United States.

7. Upon information and belief, Related Management Company ("Related") is a corporation organized and existing under the laws of the State of New York and is authorized to do business in the State of New York. Upon information and belief, Related maintains its corporate offices at 423 West 55th Street, 9th Floor, New York, New York 10019.

8. At all times relevant to the Complaint, Plaintiff was an "eligible employee" of Related within the meaning of 29 U.S.C. § 2611(2) in that Plaintiff was employed by Related for more than twelve months prior to the events underlying this lawsuit; was employed by Related for at least 1,250 hours during the 12-month period immediately preceding the commencement of the leave which underlies this lawsuit; and Defendant Related employed more than 50 employees within a 75 mile radius of where Plaintiff worked.

9. At all times relevant to the Complaint, Plaintiff suffered from a serious health condition within the meaning of 29 U.S.C. § 2611(11). Specifically, Plaintiff suffered from severe foot issues which required surgery on both of her feet.

10. At all times relevant to the Complaint, Defendant Related was an employer within the meaning of 29 U.S.C. § 2611(4) in that it is engaged in an industry affecting interstate commerce and employed more than 50 employees for each working day during each of 20 or more calendar work weeks in the current and preceding calendar year.

11. At all times relevant to the Complaint, Defendant Related was an employer within the meaning of Human Rights Law § 292(5) and City Law § 8-102(5).

## STATEMENT OF FACTS

12. Plaintiff was hired in or about February 2009 as a full-time Related leasing representative. Plaintiff was told that she would initially train as a "floater" assigned to different properties on different days and that she would ultimately be assigned to a permanent set position at a specific building. Plaintiff's income as a floater equaled approximately $60,000 a year.

13. Within six months, Plaintiff had been promoted to a permanent position as the co-in-house broker at the Monterey Apartment Building on East 96th Street. Plaintiff's income significantly increased. Plaintiff's permanent position at the Monterey Apartment Building was also far less physically taxing and required far less travel.

14. In 2011, Plaintiff was again promoted to sole-in house representative at the Ventura apartment building, where her annual salary increased to more than $100,000 a year.

15. Plaintiff excelled at her job at the Ventura and she enjoyed a healthy relationship with the building owner and management team.

16. Plaintiff was a reliable and efficient worker, and received many positive evaluations and merit based increases and/or bonuses in recognition of her work.

17. While employed by Defendant, Plaintiff began to experience severe foot problems. She visited her doctor in November of 2012. Plaintiff's doctor referred her to a podiatrist, who advised her that she required surgery on both of her feet.

18. Plaintiff emailed her immediate supervisor, Darcie Cattani ("Supervisor Cattani"), and her Regional Leasing Manager, Jodi Pincus, and advised them that she required surgery on her left and right feet and would have to take temporary leave.

19. Neither Pincus nor Cattani ever responded directly to Plaintiff's email; instead, immediately thereafter, Defendant began to freeze Plaintiff out. Her manager stopped interacting with her and essentially stopped responding to information requests that Plaintiff made about the Ventura.

20. Although the company had recently obtained a new computer system and was training all of its employees, Plaintiff's training sessions were continuously cancelled. Despite her many requests, Defendant refused to train Plaintiff on the new system.

21. Upon information and belief, Defendants refused to train Plaintiff on the new system because they had no intention of employing her after her FMLA leave.

22. Plaintiff sensed that her job was on the line and noticed that she was being treated in a hostile manner by her supervisors.

23. Immediately thereafter, Plaintiff was refused her end of year bonus, though she had been more successful than ever and though the she had achieved better results at the Ventura than any other Related broker.

4

24. When Plaintiff inquired about her bonus, Supervisor Cattani advised her that they would have to discuss it in person. When Supervisor Cattani came to the Ventura however, she avoided discussing it with Plaintiff. As she was leaving, Plaintiff inquired as to whether she was getting a bonus and Supervisor Cattani responded, "Not everyone gets a bonus and you don't get one this year." Plaintiff was shocked as she had gotten a $12,000 bonus the year before.

25. Upon information and belief, Defendant refused to give Plaintiff a bonus retaliation for requesting FMLA leave and because they had no intention of employing her after her FMLA leave.

26. Plaintiff's surgery was scheduled for January 18, 2013 after another patient cancelled. Plaintiff immediately notified Supervisor Cattani and Related Human Resources Representative Wendy Rodriguez of the surgery date.

27. Plaintiff was relieved that the surgery and recovery would take place during the slower winter months, instead of the busy spring season, but Related's HR Department exhibited annoyance about the surgery and questioned Plaintiff about why she had to have the surgery. Plaintiff was forced to defend her right to take leave and forced to advise Related that she was in too much pain to avoid the surgery.

28. At or about this time, Plaintiff noticed that her supervisors were communicating with her far less than they had communicated with her prior to her FMLA request. Plaintiff had always enjoyed Related's "open door" communication policy, and was surprised to be frozen out.

28. On or about January 17, 2013, Plaintiff filled out the appropriate forms and was granted FMLA Leave. As required under the law, she was promised that she should be returned to the same or an equivalent position.

5

29. On January 18, 2013, Plaintiff had surgery on her left foot and on February 8, 2013 she had surgery on her right foot.

30. Plaintiff planned to and was cleared to return to work at her position as the Ventura leasing representative on or about April 5, 2013. When Plaintiff received Related's leasing representative schedule via email a few days before her return, however, she was shocked to see that she had been demoted to the trainee position of a floater.

31. Plaintiff was also shocked to see that a new permanent broker had just been assigned to the Ventura the week before and that she was only assigned to float there because the new broker was going out on vacation. Her position at the Ventura had been filled by floaters for the first eleven weeks of her FMLA leave. Upon information and belief, Defendant intentionally filled her position immediately before her return to punish her for taking FMLA leave.

32. Defendant failed to place Plaintiff in the same or equivalent position and instead or returning her to her position at the Ventura, assigned her to the far less lucrative and more physically demanding floater position.

33. Plaintiff immediately called her supervisor, Supervisor Cattani, and asked why she was no longer assigned to be the permanent broker at the Ventura. Supervisor Cattani responded that it was not her decision, and that she does not set the employee schedule.

34. Plaintiff arrived at the Ventura the following day and intended to reach out to Daria Salisbury, the Vice President of Related, to explain that the floater position was far more physically demanding and less lucrative than the Ventura position she lad left. Plaintiff intended to ask to be reassigned to the Ventura.

35. Immediately after her arrival however, Plaintiff received an email, saying that Related had made a "scheduling mistake" and that she must immediately leave the Ventura and go to the Monterey instead to work as a floater there.

36. Although the owner of the Ventura requires Related to provide full time brokerage coverage, Plaintiff was instructed to leave the Ventura unattended with no leasing representative.

37. Plaintiff was forced to walk a half a mile to the Monterey although she had just had surgery on her feet. When she arrived at the Monterey, she found a broker already there. She was even more confused about why she had been instructed to leave the Ventura when she saw that the Monterey had a very light viewing schedule that day.

38. Because the Monterey is much larger than the Ventura, each showing requires far more walking. The Monterey has 540 apartments and full amenities that must be shown to all possible tenants, whereas the Ventura has just 240 apartments and much smaller and simpler amenities. A walk through the Ventura requires approximately ten to fifteen minutes of walking, but a walk through the Monterey requires twenty five to thirty minutes of walking.

39. The following day, Plaintiff was placed at an even larger building known as One Carnegie Hall which contains over 600 apartments in two large towers and required even more walking than the Monterey. Plaintiff was scheduled to take so many viewings that she was not even allowed a lunch break until she formally requested that she be given a break.

40. Upon information and belief, Defendant intentionally assigned Plaintiff to the floater position in retaliation for Plaintiff taking FMLA leave. Upon information and belief, Defendant intentionally assigned Plaintiff such a physically demanding position so that she would be forced to quit.

7

41. Plaintiff repeatedly advised Defendant Related that she could not handle the physical requirements of the floater position and needed to be placed back in her position at the Ventura. She told Defendant Related that the floater position she had been assigned to was not equivalent to the position that she had left. Defendant's HR Representative, Wendy Rodriquez, advised Plaintiff that she was placed in the same position as a leasing representative. Plaintiff advised her that the floater position required far more physical work and that a floater could not earn anywhere near as much money as a permanent leasing representative. She also asked Wendy why the position was only filled the week before she got back.

42. Plaintiff's request to be placed in her original position was ignored and her health condition worsened. Defendant could not explain why the position had been filled immediately before Plaintiff's return.

43. Because Defendant Related refused to return Plaintiff to her position at the Ventura or a comparable position at a smaller building, Plaintiff was forced to ask for a special accommodation.

44. Upon information and belief, at no time did Defendant attempt to investigate or engage in an interactive process to determine whether accommodating Plaintiff's request was feasible.

45. Defendant's only response to Plaintiff's request for a reasonable accommodation was to fire her on May 10, 2013.

## FIRST CAUSE OF ACTION
*FMLA – Interference*

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 of the Complaint as if fully set forth herein.

8

47. By the aforementioned actions, Defendant, has interfered with, restrained and denied Plaintiff her rights under the FMLA, in violation of 29 U.S.C. §§ 2612(a), 2614(a) and 2615(a).

48. As a result of Defendant's violation of the FMLA, Plaintiff has suffered severe damage, including deprivation of income and benefits and loss of opportunity for advancement and promotion.

## SECOND CAUSE OF ACTION
*FMLA – Retaliation*

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. At all times relevant herein, Defendant Related was and is a "covered employer" within the meaning of the FMLA.

51. Defendant was obligated to provide Plaintiff with FLMA leave and reinstate her to the same or an equivalent posiiton upon her return from approved leave.

52. Defendant has violated the FMLA by unlawfully retaliating against Plaintiff for exercising rights protected by the FMLA by, *inter alia*, terminating her in retaliation for asserting her rights under the FMLA and subjecting her to an adverse employment action that would reasonably dissuade a reasonable person from exercising rights protected by the FMLA.

53. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages, including, but not limited to, wages, salary, employment benefits and/or other compensation denied or lost by reason of Defendant's unlawful conduct, in addition to costs and reasonable attorney's fees.

54. Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated and/or punitive damages.

### THIRD CAUSE OF ACTION
*Disability Discrimination (Actual and Perceived)*

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 51 of the Complaint as if fully set forth herein.

56. At the time Defendant terminated Plaintiff's employment, Plaintiff was a qualified individual with an actual disability as defined by Human Rights Law § 292(21) and City Law § 8-102(16) who was able to perform the essential functions of her position in a reasonable manner with or without reasonable accommodation.

57. Defendant regarded and/or perceived Plaintiff as disabled (as defined by Human Rights Law § 292(21) and City Law § 8-102(16)(a)) by virtue of her medical condition as alleged above.

58. Defendant terminated Plaintiff because of her actual or perceived disability.

59. Plaintiff was qualified to (and did) perform the essential functions of her position, with or without reasonable accommodation.

60. By the aforementioned actions, Defendant has discriminated against Plaintiff in the terms, conditions, and privileges of her employment, on the basis of his actual or perceived disability, in violation of the Human Rights Law § 296(1) and City Law § 8-107(1).

61. As a result of the discrimination engaged in by Defendants, Plaintiff has suffered severe damage, including deprivation of income and benefits, loss of opportunity for

advancement and promotion, emotional pain and suffering, mental anguish, humiliation and damage to reputation and career.

## FOURTH CAUSE OF ACTION
### *Aiding and Abetting Disability Discrimination (Actual and Perceived)*

62. Plaintiff realleges and incorporates by reference paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63. At the time Defendant terminated Plaintiff, Plaintiff was a qualified individual with an actual disability as defined by Human Rights Law § 292(21) and City Law § 8-102(16) who was able to perform the essential functions of her position in a reasonable manner with or without reasonable accommodation.

64. Defendant regarded and/or perceived Plaintiff as disabled (as defined by Human Rights Law § 292(21) and City Law § 8-102(16)(a)) by virtue of her medical condition as alleged above.

65. Defendant terminated Plaintiff because of her actual or perceived disability.

66. Plaintiff was qualified to (and did) perform the essential functions of her position, with or without reasonable accommodation.

67. By the aforementioned actions, Defendant has aided and abetted discrimination against Plaintiff in the terms, conditions, and privileges of her employment, on the basis of her actual or perceived disability, in violation of the Human Rights Law § 296(6) and City Law § 8-107(6).

68. As a result of the aiding and abetting engaged in by Defendant, Plaintiff has suffered severe damage, including deprivation of income and benefits, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation and damage to reputation and career.

## FIFTH CAUSE OF ACTION
*Failure to Provide Reasonable Accommodation*

69. Plaintiff realleges and incorporates by reference paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70. By the aforementioned actions, Defendant, separately and together, failed to reasonably accommodate Plaintiff's known disability in violation of the Human Rights Law § 296(3)(a) and City Law § 8-107(15).

71. As a result of Defendants' failure to provide a reasonable accommodation, Plaintiff has suffered severe damage, including deprivation of income and benefits, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation and damage to reputation and career.

**WHEREFORE**, Plaintiff demands that judgment be entered in her favor and that the Court order and award Plaintiff the following relief against Defendant:

A. Damages in the form of back pay with interest based on Plaintiff's appropriate compensation had her rights under the FMLA not been violated and had she not been discriminated against;

B. Compensatory damages for her emotional pain and suffering, mental anguish, distress, humiliation, and loss of reputation in an amount to be determined at trial;

C. Punitive damages in an amount to be determined at trial

D. Liquidated damages pursuant to 29 U.S.C § 2617(a)(1)(A)(iii);

E. Attorneys' fees;

F. Costs and disbursements;

G. Interest; and

H. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury as to all issues in the above matter.

Dated: New York, New York
August 16, 2012

                                    Respectfully submitted,
                                    NESENOFF & MILTENBERG LLP

                                    By: _____
                                    Andrew T. Miltenberg, Esq.
                                    Megan S. Goddard, Esq.
                                    363 7th Avenue, 5th Floor
                                    New York, New York 10001
                                    Tel: 212-736-4500